UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| MITCHELL JAROD FORD, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) NO. 3:18-cv-01273 |
| DAVID WESTBROOKS, Warden, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Mitchell Jarod Ford, an inmate of the Riverbend Maximum Security Institution (RMSI) in Nashville, Tennessee, has filed a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application to proceed in forma pauperis (IFP). (Doc. No. 3.)

**I.     Application to Proceed IFP**

Under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a). Because it is apparent from the IFP application that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 3) will be granted by Order entered contemporaneously herewith.

**II.    Initial Review of the Complaint**

**A.     PLRA Screening Standard**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, § 1915A provides

that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in § 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

B.  **Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color

2

of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations and Claims

Plaintiff states that he "is bringing this complaint to challenge the Constitutionality of being confined to Involuntary Administrative Segregation (hereinafter "IAS") without being provided a Due Process Placement Hearing, in accordance [with] Tennessee Department of Correction (hereinafter "TDOC") Policy 404.10." (Doc. No. 1 at 17.) He attaches TDOC Policy 404.10 to his complaint and alleges that it confers a right to a placement hearing where the inmate can "put forth evidence as to why he should not be placed in to IAS, and if the Hearing Committee recommend[s] placement in IAS, then the inmate is provided the rights of appeal." (Id. at 18.)

Plaintiff alleges that, based on an incident of violence between himself and a correctional officer on August 29, 2015, he was charged with the disciplinary offense of assault on staff; that a disciplinary hearing was held on September 17, 2015 pursuant to TDOC policy; that he was allowed an inmate advisor at the hearing and was permitted to introduce evidence in his defense; and, that the RMSI disciplinary committee found him guilty and recommended punishment that included administrative segregation following three days of punitive segregation. (Id. at 17.) He was therefore placed in IAS on September 21, 2015. (Id.) Plaintiff further states that he appealed the disciplinary committee's findings first to the Warden and then to the Commissioner of TDOC, both of whom denied Plaintiff's appeal. (Id. at 17, 22–23, 30–32.) He alleges that as a result of these disciplinary proceedings he has been held in IAS for 36 months, with monthly IAS reviews

3

which a counselor conducts at Plaintiff's cell door, but without ever having received an initial placement hearing or the appellate remedies that follow from the placement decision. Plaintiff alleges that he has been informed that he will remain in IAS for approximately five years, and that "[t]his type of punishment impose[s] atypical hardship" upon him. (Id. at 18.)

The complaint does not request any particular relief. However, the Court construes Plaintiff's challenge to the constitutionality of his placement in administrative segregation without "a Due Process Placement Hearing" as seeking declaratory relief, and his allegation of the hardship of his continued segregation as seeking injunctive relief.

Plaintiff has recently filed additional documents to supplement his complaint (Doc. No. 5), demonstrating the prison's continuing review of his placement in IAS. These documents demonstrate that Plaintiff has had monthly reviews of his segregated status; that on at least six such reviews he was recommended for continuance in IAS by a counselor and the warden approved the recommendation (id. at 6–8, 27–29); that on four such reviews he was recommended for release from IAS by the counselor but the warden disapproved the recommendation due to the seriousness of his disciplinary offense (id. at 5, 9, 25–26); that he was indicted for felony aggravated assault but the charge was dismissed on August 30, 2017 (id. at 3); and that, in the wake of that dismissal, his revoked sentence credits were restored (id. at 4). The supplemental documents also reflect that Plaintiff filed a grievance over the lack of a detailed explanation as to why the warden disapproved the recommendations that he be released from IAS, and that Plaintiff requested a hearing in his grievance. (Id. at 38–39.) However, his grievance was denied as inappropriate to the grievance procedure. (Id. at 36–37.)

### D. Analysis

#### 1. Placement in IAS

Plaintiff claims that he was deprived of due process when he was placed in IAS without being provided a separate hearing in accordance with TDOC Policy 404.10. However, "[i]t is settled that alleged violations of Tennessee Department of Correction policies are not actionable under Section 1983." Boyd v. Staggs, No. 1:19-cv-00007, 2019 WL 295087, at *2 (M.D. Tenn. Jan. 23, 2019) (citing Rimmer-Bey v. Brown, 62 F.3d 789, 790–91 (6th Cir. 1995)). Furthermore, "no liberty interest subject to due process protection is created by TDOC policies and regulations." Taylor v. Dukes, 25 F. App'x 423, 424 (6th Cir. 2002) (citing Rimmer-Bey, supra).

In Rimmer-Bey, the Sixth Circuit confronted the same factual predicate and procedural due process argument presented in the case before this Court. Rimmer-Bey received a disciplinary hearing before prison officials on a major misconduct charge and was found guilty. He was sentenced to punitive segregation and, after serving his time there, was placed into administrative segregation without a hearing. He then claimed that "the mandatory language of the [Michigan prison] regulations created a liberty interest and that he was entitled to notice and a hearing as a condition precedent to his being placed into administrative segregation." Rimmer-Bey, 62 F.3d at 790.

The Sixth Circuit held that Rimmer-Bey's claims were without merit for two reasons. First, the court noted that Rimmer-Bey based his claim of entitlement to a placement hearing solely upon the mandatory language of state prison regulations, when procedural due process protections only apply if, "[a]part from any mandatory language in a regulation, the plaintiff . . . suffered restraint which imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. at 790–91 (quoting Sandin v. Conner, 515 U.S. 472 (1995)). The

court found that placement in administrative segregation does not alone impose any atypical and significant hardship on prisoners. Id. at 791; see also Mackey v. Dyke, 111 F.3d 460, 463 (6th Cir. 1997) ("Mackey does not, and could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship.'"); Groomes v. Parker, No. 08-2028-AN/P, 2008 WL 4057763, at *5 (W.D. Tenn. Aug. 26, 2008) ("[A]n inmate generally cannot maintain a due process claim based on his confinement in administrative segregation.") (collecting cases).

The Rimmer-Bey court also explained that the claim before it was without merit because Rimmer-Bey had received all the process he was due:

> The procedure to classify a prisoner into administrative segregation under Michigan prison regulations requires notice of the intended reclassification and, in most cases, a hearing. Mich. Admin. Code r. 791.4405(2). However, a reclassification hearing is not required if the prisoner has already been found guilty of a major misconduct violation as the result of a hearing on that charge. Mich. Admin. Code r. 791.4405(4). Thus, the Michigan regulations provide that a second hearing, addressing a prisoner's reclassification, is not required if the prisoner has received a proper major misconduct hearing and if the subsequent reclassification was anchored in the findings of guilt that resulted from the previously conducted major misconduct hearing. *Id.* In this case, the plaintiff had been granted a full evidentiary hearing on the major misconduct charge against him, and the administrative segregation was based solely on that conduct. Consequently, affording the plaintiff notice and a hearing on the intended reclassification was unnecessary.

62 F.3d at 791.

Here, as in Rimmer-Bey, no facts are alleged to support the notion that Plaintiff's placement in IAS imposed an atypical and significant hardship on him. Rather, Plaintiff bases his due process claim solely upon the lack of a placement hearing that he reads TDOC Policy 404.10 to require. The Complaint attaches TDOC Policy 404.10,[1] which appears to have the same

---

[1] The Court may consider attachments to the complaint in performing the screening required by the PLRA. Powell v. Woodard, No. 17-6212, 2018 WL 5098824, at *2 (6th Cir. May 21, 2018) (citing, e.g., Arauz v. Bell, 307 F. App'x 923, 925 n.1 (6th Cir. 2009) ("We are also permitted to consider materials attached to the complaint, and we will reference exhibits that Arauz attached to

structure as the regulations discussed in Rimmer-Bey. Policy 404.10 provides that when IAS placement is recommended by the Warden based upon his "belie[f] that a condition exists requiring immediate placement, . . . a hearing by the disciplinary board shall occur within 72 hours" and, "[i]n cases where specific disciplinary rule violations are involved, the disciplinary board should hear and dispose of such charges first." (Doc. No. 1 at 12–13.) When the disciplinary board itself recommends IAS placement "[a]fter hearing and disposing of a charge for a disciplinary rule infraction," "[t]he inmate shall be verbally advised by the board of its recommendation and be afforded the opportunity to present a statement during the hearing." (Id. at 13.) Plaintiff specifically alleges that it was the disciplinary board that recommended IAS placement. (Id. at 18.) Regardless, it appears that Plaintiff's disciplinary hearing and appeal provided procedural due process vis-à-vis his placement in IAS, just as it did for the inmate in Rimmer-Bey. A separate hearing was therefore unnecessary.

In short, the allegations of the complaint in this case mirror those before the Sixth Circuit in Rimmer-Bey. Based on that decision and the other authorities cited above, this case must be dismissed for failure to state a viable due process claim.

Finally, the Court notes that any viable claim based on the failure to hold a hearing before Plaintiff's September 21, 2015 placement in IAS would also be subject to dismissal based on the statute of limitations. Sixth Circuit precedent "has long made clear that the limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)." Porter v. Brown, 289 F. App'x 114, 116 (6th Cir. 2008) (citing, e.g., Hughes v.

---

his complaint when these attachments clarify matters.")); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir. 2000)). As this action was not filed until November 2018, any claim stated herein would be time-barred.

### 2. Continuance in IAS

The Court must next examine whether a viable due process claim is stated in relation to the continuance of Plaintiff's segregation since 2015, based on his allegation that he is to remain in IAS for a total of approximately five years, and his supplemental filing which documents the periodic review and continuation of his segregated status. Although the initial placement decision may not impose an atypical and significant hardship, "the nature and duration of an inmate's segregation may affect whether the State has implicated a liberty interest that warrants due-process protection," as would the factor of "whether the segregation will affect the overall duration of the inmate's sentence." Harden-Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008). While Plaintiff does not allege any facts concerning the nature of his segregation and how it differs from life in the prison's general population, his supplemental filing shows that he has been held in IAS for more than three and one-half years. Assuming without deciding that this length of time in segregation is sufficiently atypical to give rise to a liberty interest,[2] Plaintiff's supplemental filing establishes that he has received all the process that is due to him.

Supreme Court jurisprudence establishes "that prison officials must engage in some sort of periodic review while an inmate is confined in administrative segregation, and that the officials' decision to continue such confinement must be supported by 'some evidence.'" Selby v. Caruso, 734 F.3d 554, 559 (6th Cir. 2013) (citing Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983), and Superintendent v. Hill, 472 U.S. 445, 454 (1985)). Here, Plaintiff's filing shows that he had

---

[2]  Compare Jones v. Baker, 155 F.3d 810, 812–13 (6th Cir. 1998) (finding no liberty interest created by two and one-half year segregation), with Harris v. Caruso, 465 F. App'x 481, 484 (6th Cir. 2012) (finding liberty interest created by eight-year segregation).

monthly reviews in which his clean disciplinary record since placement in IAS was noted and his release from segregation was occasionally recommended by a counselor. Furthermore, as was the case for the segregated inmate in <u>Jones v. Raye</u>, "[t]he reason for the continuances—the seriousness of his attack on the corrections officer[]—was supported by some evidence, as a grand jury had found sufficient evidence to indict him." <u>Jones</u>, No. 12-6568, 2014 WL 10319865, at *2 (6th Cir. June 3, 2014). <u>See</u> <u>also</u> <u>Powell v. Washington</u>, 720 F. App'x 222, 226–27 (6th Cir. 2017) (holding that segregated inmate received due process based on allegations that he "received periodic reviews of his status, and despite his conclusory claim that his reviews were perfunctory," the fact that he had committed violent disciplinary infraction "provided some evidence to support his continued detention in administrative segregation"). Finally, there is no indication in the complaint or his supplemental filing that the overall duration of his sentence has been affected by his continuation in IAS. Accordingly, even if his continued segregation implicates a protected liberty interest, Plaintiff fails to state a viable claim for denial of due process.

**III. Conclusion**

In light of the foregoing, this action will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE